Good morning. If it please the Court. Thirty years ago, Feretta clearly established the governing Sixth Amendment principle that a timely request for self-representation must be honored. In doing so, the Court held that when a criminal defendant clearly and unequivocally declares to a trial judge weeks before trial that he wants to represent himself, denial of the request violates the Sixth Amendment. In establishing this principle, the Supreme Court left to lower courts the task of determining the precise contours of timeliness, as applied to the facts of individual cases. And there may be certain factual scenarios where there could be a genuine question as to the reasonableness of the application of Feretta. But this case is not one of those outlying cases. There is no question that under Feretta, and this circuit's opinions interpreting Feretta, a request made 16 days before trial, not for the purpose of delay, is timely. And that is per se. There wasn't a finding here that it was not for the purpose of delay, was there? No, the trial court didn't make a finding that it was not for the purpose of delay. In fact, what the trial court found was that the undue hardship to the parties, quote, outweighed Mr. Randall's Feretta rights. So, at least for the moment, that issue remains unresolved. There hasn't been a factual determination as to the purpose of the request? No, but actually, I think implicitly the trial court found that it was genuine. Mr. Randall gave a litany of reasons why he wanted to represent himself. The trial court found that it was a knowing, intelligent, and voluntary waiver of his Feretta rights. But that it simply, excuse me, was simply too burdensome to permit him to represent himself, which is a contrary application of Feretta. And, in fact, the California Court of Appeals holding otherwise is contrary to an unreasonable application of Supreme Court precedent. That is what this Court held in Moore v. Calderon. In fact, the timing in Moore v. Calderon is identical to the timing of the request in this case, which is 16 days before trial. You know, I'm sort of wondering what the, you know, putting myself in the shoes of the trial judge, what he should have done. This guy was arraigned in July of 98. Continuance after continuance, it finally comes, ready for trial a year later. The prosecutor has 20-some-odd witnesses there. These people are, they're college students, so they're from all far-flung places. And then he gets this letter virtually on the eve of trial. I mean, what's he supposed to do? Well, what's interesting about the way both the trial court and the California Court of Appeals handle this is the letter actually involves three requests. He wants to represent himself, he wants a continuance, he wants access to the law library. The first request is Feretta, and if it is timely and unequivocal and knowing, voluntary and intelligent, which it was, the trial court has to grant the request. Does that mean the trial court has to grant a continuance because he's coupled the two? I think those are, see, I think those are two separate questions. And the trial court runs roughshod essentially over Mr. Randall's Feretta rights because I think in the back of his mind he's concerned with the second question. Well, but it's an understandable concern. If he said, fine, you can represent yourself, we're starting trial tomorrow or Monday in this case. Right. I can imagine the judge being concerned that he's just planted a time bomb for the future. Although, in fairness to Mr. Randall, the request is served according to his certificate of service on the prison authorities on the 14th of June. We know defense counsel received it on the 16th. We know the prosecutor received it on the 17th, but the case doesn't get called until the 28th. It doesn't change the problem the trial judge has because even if he makes the request then, it's understandably going to take a few days for the court to entertain it. And if the request is coupled with a request for a continuance, which seems inevitable because the trial judge could probably figure out that I can't tell this guy he's got to start trial on Monday, then as far as the trial judge is concerned, he has these two requests which are linked together. And I'm not sure that he should be required to continue the trial and put up with everything else given that the request comes up two days, two weeks, something like that, but clearly at a time when the defendant isn't prepared to start representing himself right away. Well, I do think the difference between two weeks and two days is important, certainly in terms of what is clearly established precedent. The law of this circuit is. What you're dealing with here is the EDFA standard as developed by the Supreme Court and elaborated upon since Moore was decided. At the time of Moore, it was really unclear the extent to which we would have to make a finding of objection. It was a matter of objective and reasonableness. And my question to you is that what you're asking us to say is application of the Wyndham test by the California State Court of Appeal in 2001 was objectively unreasonable at that time. I think that's a pretty difficult argument to make. I don't think you have to say that it's the Wyndham test that's a problem. I do think how the Court applied the test in this case is contrary to Feretta. The Wyndham opinion divides requests well prior to trial from mid-trial requests. It doesn't actually deal with what, you know, where the contours between the two tests that it applies are. But in this case, you have a timely request not made for the purpose of delay, and that is Feretta, and it is contrary to, and an unreasonable application of Feretta to deny that. In this case, this Court more recently in Avila v. Roe actually said that a request made prior to jury empanelment is timely as a matter of clearly established Federal law unless for the purpose of delay. And that is certainly on direct appeal, the rule. But again, we're 16 days out, which puts us squarely in the middle of Feretta. Feretta was a few weeks before trial 30 years ago, and the Court said ---- an early request, the hearing it says is weeks before trial. But again, in Moore v. Calderon, this Court said 16 days. In Avila v. Roe, it said prior to jury empanelment is clearly established. So I certainly think 16 days, as I said at the opening, this isn't a gray area. This is solidly in the land of Feretta. What the trial court may or may not have done with the second decision about the continuance, really in a lot of ways isn't before this Court. This deals with the first opinion. It's knowing, voluntary, intelligent, and the request is made more than two weeks before trial. You're saying what the judge could have done is said, look, you want to represent yourself, fine, you can represent yourself, but I'm not continuing the case, that would have been ---- Take the continuance as a second question, maybe that would have informed his waiver. It may have changed his mind about the Feretta request. But it is contrary to Feretta to say, I'm worried about the burden on the parties, and that quote outweighs your right to self-representation, because it is clearly established that if it is timely and not for the purpose of delay, you have a right to represent yourself, assuming that that's knowing, intelligent, and voluntary. Did you want to reserve any time, or do you want to use it all up now, or it's up to you? Sure. I can reserve the rest of my time for rebuttal. Thank you. Good morning. Good morning, Your Honor. May it please the Court, Lloyd Carter for the California Attorney General's Office. On behalf of Respondent, I think the issue before the Court today is whether or not the Feretta decision itself clearly establishes the parameters of the timeliness element such that we can find the rulings of the trial court and the California appellate court here objectively unreasonable under the AEDPA standard. I don't think that can be done. I don't think you can find California courts ruled unreasonably. And I think that we need to look at Feretta itself for a moment. Lots of decisions by this circuit make reference to the weeks before standard and well before trial. However, there is one other mention of the time frame in Feretta, which I think is important. And this is at 422 U.S. at 808, in which the Feretta court makes note that Mr. Feretta, after he made his original request, several weeks passed before they went back in the court and ultimately the trial judge in Feretta denied his self-representation request. So we do know from Feretta that there were several weeks. I looked up the word several in the dictionary. It's more than two. But I don't think we need to get hung up on any kind of a bright-line rule as to when it becomes timely. I would point out that Justice Blackmun, in his dissent in Feretta, poses the question, when does it become untimely? And if you judge from Justice Blackmun's dissent, his questions that he raises, can a defendant go pro per mid-trial? Obviously, then, Feretta does not establish clearly clear parameters for the timeliness element. So I think that, in fact, the California appellate courts and the trial courts ruled quite reasonably. We would object to the fact that there was no purpose of delay in Mr. Randall's request here. He clearly wanted 60 days. And it's clear from the Feretta hearing transcript that the judge was quite concerned about why Mr. Randall, Petitioner, did not make his request earlier. This case had been around for a year. Petitioner had had one attorney, public defender, the first six months. Then Mr. Schultz, his public defender at the time request, had been on for nearly for around five months. The Petitioner makes no complaint to his defense counsel about these motions that he wants to file, makes no expression of dissatisfaction that he wants to represent himself. And so I think the Court quite reasonably was concerned about why Petitioner would wait until two weeks before trial, 16 days, as counsel said, to bring up this   trial. It's to delay the trial. And he's made a three-day continuance. He knows he – by the way, in his written note to the Court of June 14th, he says after much consideration, he's decided to go pro per. He's been thinking about it a long time. He doesn't let his attorney go. But the judge didn't say he brought this motion for an improper purpose. Well, I agree with counsel in her brief that the judge did not expressly state on the record that this was brought for the purpose of delay. I don't believe that there's any language in Feretta which requires an express finding by the trial court. Now, we would disagree that there's no implied finding. The whole tenor of the trial court's questioning of Petitioner was why didn't you do this sooner? He claimed, by the way, to have acted as co-counsel. He'd been to trial in felony matters three times before. This was no rookie in the courtroom here. This gentleman knew what he was doing. He was buying time. I think that the trial court used the five-prong Wyndham test, California's test, trying to interpret Feretta. And the California rule is reasonably timely. And I think that the California courts found it's not objectively unreasonable that they concluded that this guy waited too long, that his motives were suspect, and that it was too far along the proceedings. I think it's important that the Friday before the trial is supposed to start on Monday. Both sides have all their witnesses lined up. Defense counsel is ready to go. And that the prosecutor had 20 to 30 witnesses. She, the prosecutor, you know, noted that a lot of these witnesses were college students out on break, and that scheduling might be a problem, that the rape trauma expert had been set. I think it's also important, and I would like to point out some of the claims that Petitioner made at the Feretta hearing. For one, he claimed to have picked a jury. That's in the excerpt of record at page 17, RT 208. He claimed to have represented himself with counsel before. And the judge asked him, why do you want to represent yourself? He says, well, right now, because of the situation in the case I'm in, I would sit down and take time to look off into it more deeper. I'm the one that can look into the case. My counsel, we have sat down, and we can't agree on things. Now, he waits almost a full year into the case to complain about the quality of his representation. Well, he also said that the lawyer wasn't visiting him in jail. He, well, there's. He says the lawyer won't file motions he wants him to file. Well, this is the first that he makes. He'd been to court, as the Fifth District Court of Appeal points out, the State Appellate Court. He'd been to court on three previous occasions with this particular defense counsel, had never complained to the court about either the. I know, but now we're getting down to the short strokes. I mean, he's shortly approaching trial, and he sees that his motions aren't being filed, and the lawyer's not visiting him. So, I mean, at this point, it's got to shut up. His first counsel did not file these motions either. His first public defender he had for a full six months never complained about her. Presumably early on in his representation by Mr. Schultz, he expressed, and by the way, these motions that he wants to file do come up in his petition on habeas corpus. What he's claiming is that even though he agreed to speak to the officers, that his Miranda rights were violated because the officers, quote, lied to him. Now, I think that the trial court had serious misgivings about the credibility of Petitioner here. He wants a two-month delay just to file his pretrial motions, to research them, much less what time that he might ask for in terms of trial preparation. We have a victim here that's on the record who was being traumatized by these repeated delays. She testified at trial that during this period of time she was having nightmares, couldn't sleep at night, was depressed. And I'm having to assume she testified at the prelim that Petitioner is well aware that we have a traumatized victim here who may or may not decide to bail out. Agreeably, that's speculative. But nevertheless, the Court is looking at a case. He's ready to go three days later to start trial. And now, I don't believe that we should punish Petitioner for the fact that he filed his written motion on the 14th and the Court didn't consider it for another 10 or 11 days. But I think that in that event, let me ask you to explain what we can do with the or what you would have us do with the Moore decision. I understand your argument focuses on Supreme Court decisions for good reason, but we're bound by prior decisions of our Court interpreting Supreme Court decisions under EFTA. And Moore seems to say in a situation with a similar number of days that FREDA applies. Well, I think Moore was decided in a pre-AEDPA context that that arose before there were subsequent rulings. And I just don't see how out of FREDA you can get a bright-line rule that says there is this I think it would be a trap for this Court or for any court to lock in on the number of days before trial. I certainly would concede that there could be a scenario whereby 16 days before trial, it would be entirely appropriate to grant the request. But as the Fifth District Court of Appeal pointed out, the trial court considered the whole, the totality of the circumstances, which this Court asked that trial judges do in considering. We had the fact that he waited so long to make his request. The fact that the case was ready to go to trial. I'm not saying that the inconvenience, I don't think it was mere inconvenience of the attorneys involved. The prosecutor had mentioned that she was going to move to another section of the DA's office and that she wanted to complete this case. Well, the trial court rightfully said, I'm not giving that much credit in my weighing of these, of all the circumstances here. And to return to FREDA, you have to consider all the circumstances. So counsel may be right. There may be cases where the self-representation request should have been granted. But I don't believe if you look at the totality of the circumstances in this case that this is such a case. Certainly, you can't say that this was objectively unreasonable here based upon any specific language in FREDA, which I believe is the AEDPA standard. Mr. Carter, thank you. Thank you, Your Honor. Ms. Leonetti, you get the last word. FREDA's bright line holding is that a request made weeks before trial is timely and must be granted, if not for the purpose of delay. In Williams v. Taylor, the Supreme Court made clear that for the purpose of the AEDPA Supreme Court precedent language, it is not only the bright line rule that matters, but also the generalized legal principles and standards that flow from them. And in doing so, the Court explicitly refused to limit the Supreme Court precedent language of AEDPA to limit the Federal Court's independent interpretive authority with respect to applying that Supreme Court doctrine. And in case, in fact, in a fairly recent case called Robinson decided last year, this Court spent a great deal of time discussing the Williams v. Taylor language, the relationship between bright line rules of the Supreme Court and interpretive opinions by the circuit courts applying them. It is clear not only, I think, from Moore v. Calderon, but more recently from Avila v. Roe, that FREDA is clearly established Supreme Court precedent and that denying this request made 16 days before trial and not for the purpose of delay was contrary to the clearly established law of FREDA as interpreted in the Ninth Circuit. Thank you very much. Thank you. Ms. Kennedy, thank you. Mr. Carter, thank you as well. The case will start you to submit it. 0416286, Sandoval Huerta v. Castro is submitted on the briefs at this time. The next case then to be argued is 0216328, Bell v. Hawaiian Airlines. Each side will have 20 minutes. Good morning.
judges: Thomas, Silverman, Clifton